**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 23-cv-21388-BLOOM/TORRES

EMILE PARKER,

    Petitioner,

v.

U.S. ATTORNEY GENERAL,

    Respondent.

_____/

**ORDER ON MOTION *IN LIMINE* FOR ADVERSE INFERENCES**

This cause comes before the Court on Respondent, the U.S. Attorney General's Motion to draw certain adverse inferences against Petitioner, Emile Parker. [D.E. 63]. Petitioner has responded to the Motion, to which Respondent has replied. The Motion, therefore, is ripe for disposition.[1] After careful review of the briefing, pertinent portions of the record, and relevant authorities, and for the reasons set forth below, Respondent's Motion is **GRANTED**.

---

[1] On April 9, 2025, the Honorable Beth Bloom referred this matter to the Undersigned Magistrate Judge for disposition. [D.E. 86].

## I.   BACKGROUND

Throughout this case, Petitioner has stonewalled discovery. As the Court detailed in its Discovery Order, Petitioner's non-participation has included: a "refusa[al] to answer a significant number of questions at his October 11, 2023 deposition" under a purported Fifth Amendment privilege; "insufficient" responses to interrogatories (in which he incorporated by reference his Fifth Amendment assertions at his deposition); initial disclosures that "were insufficient given the over-broad categorization of the types of evidence Petitioner intended to rely upon"; a "refusal to provide responsive documents"; and an inadequate response to requests for admissions. [D.E. 58 at 4–6].

Consequently, this Court concluded that "Petitioner is precluded from offering witness testimony, declarations, or other documentary evidence in summary judgment briefing and/or at trial." [*Id*. at 7]. This Court also found that "Respondent is entitled to certain adverse inferences to be drawn against Petitioner." [*Id*.]. This Court then required Respondent to file supplemental briefing (i.e., this Motion) to request those adverse inferences.

In the pending Motion, Respondent has requested a variety of adverse inferences which purportedly are necessitated by Petitioner's widespread failure to participate in discovery. Petitioner, meanwhile, argues that despite the Court's Discovery Order, "Petitioner's invocation of his Fifth Amendment right was justified" and therefore Respondent must find a different way to navigate Petitioner's discovery shortfalls. [D.E. 73 at 1].

## II.  ANALYSIS

The Eleventh Circuit "has held … that the trier of fact may take an adverse inference against the parties to a civil action refusing to testify on Fifth Amendment grounds." *United States v. Two Parcels of Real Prop. Located in Russell Cnty., Ala.*, 92 F.3d 1123, 1129 (11th Cir. 1996) (citing *United States v. A Single Family Residence*, 803 F.2d 625, 629 n.4 (11th Cir. 1986)). Indeed, "[t]he decision to invoke the Fifth Amendment does not have to be consequence-free." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1304 (11th Cir. 2009) (citing *United States v. White*, 589 F.2d 1283, 1287 (5th Cir. 1979)). "Courts may not draw adverse inferences, however, if it is the sole basis for [p]laintiff's prima facie case, or will cause the 'automatic entry of summary judgment.'" *F.T.C. v. Glob. Mktg. Grp., Inc.*, 594 F. Supp. 2d 1281, 1287 (M.D. Fla. 2008) (quoting *F.T.C. v. Transnet Wireless Corp.*, 506 F.Supp.2d 1247, 1252 (S.D. Fla. 2007)).

Here, Respondent seeks a plethora of adverse inferences based on Petitioner's refusal to answer deposition questions or respond to discovery concerning his nationality claim. As a result, Respondent asserts that it lacks critical information "on topics ranging from general biographical information to questions about Petitioner's travel history and connections with his alleged father." [D.E. 63 at 7].

Petitioner, meanwhile, asserts three broad defenses in addition to his defenses against each adverse inference. As to the first broad defense, Petitioner argues that he had no choice but to assert his privilege because he feared criminal prosecution. As to the second, Petitioner contends that permitting adverse inferences would

effectively result in an automatic judgment against Petitioner. And third, Petitioner asserts the unfair prejudice occasioned by the inferences would overwhelmingly outweigh the probative value.

### A. *Petitioner's Broad Objections*

We will first address Petitioner's broad objections: that he feared criminal prosecution, that the inferences would result in an automatic judgment due to a lack of corroborating evidence, and that any probative value is substantially outweighed by unfair prejudice.[2]

#### 1. *Criminal Prosecution Objection*

As to Petitioner's initial objection, we have no grounds to doubt the veracity of Petitioner's subjective belief that he invoked his Fifth Amendment privilege because he feared prosecution. But that subjective belief does not sway our analysis. We have absolutely no evidence on the record to suggest that Petitioner's fear was so legitimate and so reasonable as to justify an absolute stonewalling of discovery. Nor does Petitioner provide any factual or legal support whatsoever to support this conclusory objection. Rather, Petitioner effectively urges us to take his word for it that he was justified in declining to produce any discovery or answer any deposition questions relevant to his nationality claim.

---

[2] The Court already held at the parties' discovery hearing that Respondent is entitled to draw certain adverse inferences; this briefing was ordered to serve as a supplement for *what* adverse inferences were in order, not *whether* adverse inferences were in order. Petitioner's proper recourse to challenge Respondent's entitlement to adverse inferences would have been a motion for rehearing or reconsideration. Nonetheless, in an abundance of caution, we will still fully consider Petitioner's arguments as to entitlement.

4

That we will not do. *See Hoffman v. United States*, 341 U.S. 479, 486 (1951) ("The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination."). Petitioner continuously asserted his Fifth Amendment privilege with no explanation whatsoever, refused to answer hardly any questions, and incorporated that unresponsiveness into his discovery responses. Consequently, Respondent faces enormous prejudice in that it cannot gather any useful information to lodge a defense against Petitioner's nationality argument. Accordingly, Petitioner's unsubstantiated objection that no adverse inferences should be permitted is wholly without merit. *See State Farm Mut. Auto. Ins. Co. v. Filenger*, 362 F. Supp. 3d 1246, 1255 (S.D. Fla. 2018) (drawing adverse inferences because "in their responses to interrogatories and in response to Plaintiffs' complaint, Filenger, Greydinger, Rubinshteyn, and Varisco all invoked their Fifth Amendment privilege against self-incrimination" and provided no justification); *Sec. & Exch. Comm'n v. Calmes*, No. 09-80524-CIV, 2010 WL 11505260, at *3 (S.D. Fla. Nov. 19, 2010) (drawing adverse inferences where the defendant "avoided answering during his deposition on the grounds of his Fifth Amendment privilege" and "[u]nder the circumstances of this case, the Court finds that adverse inferences based upon Shulman's invocation of his Fifth Amendment privilege are warranted" because "courts routinely exercise their discretion and allow the drawing of adverse inferences where a party (or non-party) has invoked the privilege").

5

## *2. Lack of Corroborating Evidence*

Next, Petitioner asserts that permitting adverse inferences would effectively end the case in Respondent's favor despite Respondent's lack of independent evidence. In Petitioner's view, Respondent will rely solely on the adverse inferences to procure a judgment against Petitioner. Absent from Respondent's case, argues Petitioner, is any evidence corroborating those inferences.

In response, Respondent argues that it puts forth evidence that "corroborates that if Petitioner had answered the deposition questions and interrogatories, the answers would have been adverse to Petitioner." [D.E. 63 at 7]. That evidence is presented via 20 attached exhibits, and includes a variety of deposition excerpts (from several deponents), an expert report, several of Petitioner's passports, a decision from the Department of Homeland Security, a decision from the U.S. Citizenship and Immigration Services, the birth certificate of Petitioner's ostensible father, and much more.

"The Court may not draw an adverse inference if assertion of the Fifth Amendment is the sole basis for a plaintiff's prima facie case or will result in the automatic entry of summary judgment." *Opteum Fin. Servs., LLC v. Kolbe*, No. 8:03-CV-355-T-17TBM, 2010 WL 3766470, at *15 (M.D. Fla. Sept. 22, 2010) (citing *United States v. Premises Located at Route 13*, 946 F.2d 749, 756 (11th Cir. 1991)). Rather, "a plaintiff must present some evidence tending to prove its assertion that is independent of the defendant's refusal to testify." *In re Neves*, 638 B.R. 220, 229

(Bankr. S.D. Fla. 2014) (citing *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 912 (9th Cir. 2008)).

Here, Respondent clearly presents evidence to corroborate its desired inferences. An overview of the 20 attached exhibits—virtually all of which are at least relevant to Petitioner's nationality claim—demonstrate that Respondent does not intend to rely merely on its desired adverse inferences. Petitioner also makes no meaningful argument to undermine Respondent's inclusion of these exhibits, outside of a conclusory argument that the evidence is not helpful. Thus, we reject Petitioner's broad argument that Respondent altogether lacks corroborating evidence and instead seeks solely to rely on adverse inferences. *See State Farm*, 362 F. Supp. 3d at 1255 (quoting *F.T.C. v. Transnet Wireless Corp.*, 506 F. Supp. 2d 1247, 1252 n.4 (S.D. Fla. 2007)) ("To be sure, '[c]ourts may not draw adverse inferences … if it is the sole basis for [p]laintiff's prima facie case, or will cause the "automatic entry of summary judgment."' However, as explained above, this adverse inference is not the sole basis for Plaintiffs' case, rather there is a strong documentary record indicating that Defendants operated the Clinics without proper licensing, that Plaintiffs paid Defendants substantial sums for unlawful treatments from these clinics, and that there are also substantial outstanding bills from Defendants. Accordingly, the Court draws an adverse inference from Defendants Filenger, Greydinger, Rubinshteyn, and Varisco's invocation of their Fifth Amendment privilege."); *All Web Leads, Inc. v. D'Amico*, No. 18-80571-CV, 2018 WL 6258574, at *1 (S.D. Fla. Nov. 27, 2018) ("Defendants have not here shown that D'Amico's invocation of the privilege will

7

result in judgment against him in this suit. Even if Defendant invokes his Fifth Amendment privilege, he has provided no explanation for why his defense must rest solely on his own testimony.").

### 3. *Unfair Prejudice Objection*

Lastly, Petitioner argues that any adverse inferences would have minimal, if any, probative value while running the risk of severe prejudice. Respondent, conversely, argues not only that the probative value of the inferences would be high, but that Respondent would be unfairly prejudiced if adverse inferences were not permitted.

We agree with Respondent. For one, it is not proper for us to make a general determination under Rule 403 that adverse inferences, as a whole, are unfairly prejudicial. Further, here, the probative value of the adverse inferences are extremely high, as they are directly relevant to Petitioner's nationality claim. They also are composed of facts that Respondent attempted to, but could not, procure in discovery. And outside of a conclusory suggestion that adverse inferences spur prejudice, Petitioner does not make a persuasive showing that the inferences are uniquely prejudicial (let alone that the prejudice substantially outweighs the significantly-high probative value).

Accordingly, this argument is rejected. *See S.E.C. v. Monterosso*, 746 F. Supp. 2d 1253, 1263 (S.D. Fla. 2010) ("The imposition of adverse inferences in this case also conforms with Rule 403 of the Federal Rules of Evidence. Vargas and Lynch's silence is probative. The exact probative value and any risk of prejudice will have to be

addressed on an inference-by-inference basis. Any inferences drawn must also be relevant. The Court will consider the extent to which any inferences are supported by other evidence in the record and are otherwise trustworthy under all of the circumstances."); *Action Nissan, Inc. v. Hyundai Motor Am.*, No. 6:18-CV-380-WWB-EJK, 2021 WL 2633820, at *3 (M.D. Fla. June 25, 2021) (rejecting unfair prejudice argument because it was "nothing more than a conclusory argument that f[ell] woefully short of meeting their burden").

### B. *Respondent's Specific Adverse Inferences*

We will now assess the specific adverse inferences that Respondent seeks. As an initial matter, Petitioner concedes that the following adverse inferences are supported by independent, corroborating evidence:

- Ronald Parker and Steven Parker are not Petitioner's halfsiblings; and
- USCIS determined Petitioner's Haitian birth certificate, submitted in support of his 2011 application for a certificate of citizenship, to be fraudulent and that partially as a result, USCIS denied Petitioner's citizenship application.

As to Respondent's other 36 desired adverse inferences, Petitioner lodges specific objections that, in most cases, Respondent does not offer competent corroborating evidence.

Upon review, Respondent does in fact provide corroborating evidence for each and every adverse inference it seeks in its Motion. That is, in addition to Petitioner's refusal to interact with each fact throughout discovery, Respondent also provides

9

documentary evidence outside of Petitioner's non-participation to support each inference it seeks. Accordingly, we grant Respondent's Motion to draw all of the below adverse inferences despite Petitioner's opposition. In support of each inference, we cite to the relevant portion of Petitioner's deposition or discovery document, as well as the supporting, corroborating evidence from other portions of the record.

1. Nick Poppys was not a citizen of Canada.[3]

2. Ronald Parker and Steven Parker are not Petitioner's half-siblings.[4]

3. Petitioner did not reside with Nick Poppys in Canada.[5]

4. Nick James Poppys was not the man who appeared before an officer of the civil state of Gressier, Haiti in 1980 and declared Emile Parker to be his natural born son.[6]

5. Nick Parker, who appeared after Petitioner's birth before an official, was present in Haiti at the time of his birth on November 9, 1979.[7]

---

[3] [D.E. 52 at 52:15–17] (Petitioner's deposition); [D.E. 63-4 at 20:17–21; 29:15–24; 30:9–12] (Ronald Parker's deposition); [D.E. 63-5 at 14:6–15; 69:10–11] (Steven Parker's deposition).

[4] This fact is uncontested by Petitioner. [D.E. 73 at 5].

[5] [D.E. 52 at 59:10–13] (Petitioner's deposition); [D.E. 63-11] (TECS record); [D.E. 63-15] (Nick Poppys' Minnesota Birth Certificate); [D.E. 63-4 at 67:5–11; 20:17–21:21] (Ronald Parker's deposition); [D.E. 63-5 at 24:5–14; 49:21–23; 69:10–11; 80:11–14] (Steven Parker's deposition).

[6] [D.E. 63-9] (IIRC Affidavit and Documents); [D.E. 63-18] (USCIS Decision); [D.E. 63-4 at 67:5–11; 76:7–12; 77:10–12; 77:16–18; 89:21–90:25; 91:5–14; 98:1–11; 110:1–4; 110:10–14; 117:15–20) (Ronald Parker's deposition); [D.E. 63-5 at 50:19–21; 58:24–59:14; 70:9–15; 73:25–74:1; 79:20–22; 81:6–9; 81:10–13; 83:22–24; 83:25–84:2; 84:3–12] (Steven Parker's deposition).

[7] [D.E. 52 at 68:14–18] (Petitioner's deposition); [D.E. 63-9] (IIRC Affidavit and Documents); [D.E. 63-12] (Petitioner's Haitian Birth Certificate); [D.E. 63-4 at 67:5–11; 76:7–12; 77:10–12; 77:13–15; 77:16–18; 89:21–90:25; 91:5–14; 98:1–11; 110:1–4; 110:10–14; 117:15–20; 20:17–21:21) (Ronald Parker's deposition); [D.E. 63-5 at

6. Nick Poppys never traveled to Haiti after Petitioner's birth.[8]

7. Nick Poppys never traveled to the Dominican Republic.[9]

8. Petitioner never met with Nick Poppys in the Dominican Republic.[10]

9. Nick Poppys never served in the military in Haiti.[11]

10. Nick Parker is or was a citizen of Canada.[12]

11. UCIS determined Petitioner's purported Haitian birth certificate, submitted in support of his 2011 application for a certificate of citizenship, to be fraudulent.[13]

12. The submission of the falsified extracts of Petitioner's Haitian birth certificate was one of the reasons UCIS denied Petitioner's application for citizenship.[14]

---

50:19–21; 58:24–59:14; 73:25–74:1; 79:20–22; 81:6–9; 81:10–13; 83:22–24; 83:25–84:2; 84:3–12; 14:6–15:14] (Steven Parker's deposition).

[8] [D.E. 52 at 77:7–10] (Petitioner's deposition); [D.E. 63-4 at 91:5–14; 98:1–11; 20:17–21:21] (Ronald Parker's deposition); [D.E. 63-5 at 50:19–21; 73:25–74:1; 79:20–22; 14:6–15:14] (Steven Parker's deposition).

[9] [D.E. 52 at 77:16–19] (Petitioner's deposition); [D.E. 63-4 at 84:22–24; 98:1–11; 20:17–21:21] (Ronald Parker's deposition); [D.E. 63-5 at 50:19–21; 56:23–25; 73:25–74:1; 79:20–22; 14:6–15:14] (Steven Parker's deposition).

[10] [D.E. 52 at 77:16–19] (Petitioner's deposition); [D.E. 63-4 at 84:22–24; 98:1–11; 20:17–21:21] (Ronald Parker's deposition); [D.E. 63-5 at 50:19–21; 56:23–25; 73:25–74:1; 79:20–22; 14:6–15:14] (Steven Parker's deposition).

[11] [D.E. 52 at 79:4–7] (Petitioner's deposition); [D.E. 63-16] (Nick Poppys' Certificate of Military Service); [D.E. 63-4 at 98:1–11; 20:17–21:21] (Ronald Parker's deposition); [D.E. 63-5 at 73:25–74:1; 14:6–15:14] (Steven Parker's deposition).

[12] [D.E. 52 at 80:12–15] (Petitioner's deposition); [63-11] (TECs Record); [D.E. 63-4 at 29:5–14; 30:9–12; 94:21–23; 20:17–21:21] (Ronald Parker's deposition); [D.E. 63-5 at 24:5–14; 43:19–21; 49:21–23; 55:3–4; 55:5–6; 69:10–11; 14:6–15:14] (Steven Parker's deposition).

[13] This fact is uncontested by Petitioner. [D.E. 73 at 8].

[14] This fact is uncontested by Petitioner. [*Id.* at 8–9].

11

13. Petitioner's biological father is Canadian Nick Parker.[15]

14. Petitioner obtained Canadian citizenship by descent through Nick Parker.[16]

15. In or around 1979, Nick Parker was physically present in Haiti.[17]

16. Petitioner's father is not Nick James Parker, aka Nick James Poppys, who was born in Minnesota in or around 1920.[18]

17. Nick James Parker, aka Nick James Poppys, did not legitimate Petitioner before an officer of the civil state of Gressier, Haiti.[19]

---

[15] [D.E. 52 at 138:7–10] (Petitioner's deposition); [D.E. 63-11] (TECs Record); [D.E. 63-10] (Petitioner's Canadian Passport); [D.E. 63-9] (IIRC Affidavit and Documents); [D.E. 63-4 at 77:10–12; 77:13–15; 77:16–18; 78:6–8; 78:9–11; 80:18–20; 86:13–15; 94:21–23; 110:1–4; 110:10–14; 117:15–20; 20:27–21:21] (Ronald Parker's deposition); [D.E. 63-5 at 43:19–21; 69:10–11; 84:3–12; 14:6–15:14] (Steven Parker's deposition).

[16] [D.E. 52 at 138:7–10] (Petitioner's deposition); [D.E. 63-11] (TECs Record); [D.E. 63-10] (Petitioner's Canadian Passport); [D.E. 63-9] (IIRC Affidavit and Documents); [D.E. 63-4 at 77:10–12; 77:13–15; 77:16–18; 78:6–8; 78:9–11; 80:18–20; 86:13–15; 94:21–23; 110:1–4; 110:10–14; 117:15–20; 20:27–21:21] (Ronald Parker's deposition); [D.E. 63-5 at 43:19–21; 69:10–11; 84:3–12; 14:6–15:14] (Steven Parker's deposition).

[17] [D.E. 52 at 139:18–22]; [D.E. 63-12] (Petitioner's Haitian Birth Certificate); [D.E. 63-9] (IIRC Affidavit and Documents); [D.E. 63-4 at 67:5–11; 74:15–17; 94:5–14; 94:21–23; 106:16–107:6; 20:17–21:21] (Ronald Parker's deposition); [D.E. 63-5 at 50:19–21; 73:25–74:1; 79:20–22; 14:6–15:14] (Steven Parker's deposition).

[18] [D.E. 52 at 157:17–21] (Petitioner's deposition); [D.E. 63-9] (IIRC Affidavit and documents); [D.E. 63-11] (TECs Record); [D.E. 63-15] (Minnesota Birth Certificate of James A. Poppys); [D.E. 63-8] (Bode Tech Expert Report); [D.E. 63-4 at 29:5–14; 77:10–12; 77:13–15; 20:17–21:21; 77:16–18; 80:18–20; 86:13–15] (Ronald Parker's deposition); [D.E. 63-5 at 21:20–22:20; 22:13–13; 55:3–6; 14:6–15:14] (Steven Parker's deposition).

[19] [D.E. 52 at 157:22–158:5] (Petitioner's deposition); [D.E. 63-8] (Bode Tech Expert Report); [D.E. 63-4 at 67:5–11; 74:15–17; 76:7–12; 98:1–11; 106:16–107:6; 110:1–4; 110:10–14; 117:15–20; 20:17–21:21] (Ronald Parker's deposition); [D.E. 63-5 at 50:19–21; 73:25–74:1; 81:10–13; 83:22–24; 84:3–12; 14:6–15:14] (Steven Parker's deposition).

18. Nick James Parker, aka Nick James Poppys, did not acknowledge paternity of Petitioner.[20]

19. Nick James Parker, aka Nick James Poppys, did not acknowledge paternity of Petitioner in writing under oath.[21]

20. The certification of military service in Exhibit 19 to Emile Parker's deposition pertains to a man who is not Petitioner's father.[22]

21. Beyond the documents he attached to this Eleventh Circuit petition for review, Petitioner has no evidence that supports his claim to U.S. Citizenship.[23]

22. Petitioner's claim to United States citizenship is based on a false claim that he is the son of a U.S. citizen.[24]

---

[20] [D.E. 52 at 158:6–12] (Petitioner's deposition); [D.E. 63-15] (Minnesota Birth Certificate of James A. Poppys); [D.E. 63-4 at 74:15–17; 77:10–12; 77:13–15; 77:16–18; 78:6–8; 78:9–11; 89:21–90:25; 110:1–4; 110:10–14; 117:15–20; 20:17–21:21] (Ronald Parker's deposition); [D.E. 63-5 at 55:3–6; 81:10–13; 83:22–24; 83:25–84:2; 84:3–12; 14:6–15:14] (Steven Parker's deposition).

[21] [D.E. 52 at 158:13–19] (Petitioner's deposition); [D.E. 63-4 at 74:15–17; 77:10–12; 77:13–15; 77:16–18; 78:6–8; 78:9–11; 89:21–90:25; 110:1–4; 110:10–14; 117:15–20; 20:17–21:21] (Ronald Parker's deposition); [D.E. 63-5 at 55:3–6; 81:10–13; 83:22–24; 83:25–84:2; 84:3–12; 14:6–15:14] (Steven Parker's deposition).

[22] [D.E. 52 at 6–10] (Petitioner's deposition); [D.E. 63-16] (Nick Poppys' Certificate of Military Service in the United States Marine Corps); [D.E. 63-4 at 77:10–12; 77:13–15; 77:16–18; 20:17–21:21] (Ronald Parker's deposition); [D.E. 63-5 at 55:3–6; 14:6–15:14] (Steven Parker's deposition).

[23] [D.E. 52 at 162:9–12] (Petitioner's deposition); [D.E. 63-8] (Bode Tech Expert Report); [D.E. 63-9] (IIRC Affidavit and Documents); [D.E. 63-10] (Petitioner's Canadian Passport); [D.E. 63-4 at 77:10–12; 77:13–15; 77:16–18; 78:6–8; 78:9–11; 86:13–15; 117:24–118:6] (Ronald Parker's deposition).

[24] [D.E. 52 at 162:13–19] (Petitioner's deposition); [D.E. 63-8] (Bode Tech Expert Report); [D.E. 63-4 at 29:5–14; 77:10–12; 77:13–15; 77:16–18; 78:6–8; 78:9–11; 80:18–20; 82:15–16; 82:17–18; 82:19–21; 91:5–14; 110:1–4; 110:10–14; 117:15–20; 20:17–21:21; 24:5–14; 55:3–6; 69:10–11; 81:6–9; 81:10–13; 83:25–84:2; 14:6–15:14].

23. Some of Petitioner's documents that he submitted to U.S. immigration authorities, pertaining to the U.S. citizen who Petitioner alleges is his father, came from a public records repository.[25]

24. Petitioner's family has no contemporaneous records tending to show that the U.S. citizen Petitioner claims was his father is actually his father.[26]

25. Petitioner has no correspondence between his mother and the U.S. citizen he claims was his father in his possession, custody, and control.[27]

26. Petitioner is aware of no correspondence between his mother and the U.S. citizen he claims was his father.[28]

27. Petitioner has no photographs of his mother and the U.S. citizen he claims was his father in his possession, custody, and control.[29]

---

[25] [D.E. 52 at 163:11–16]; [D.E. 63-18] (USCIS Decision); [D.E. 63-8] (Bode Tech Expert Report); [D.E. 63-9] (IIRC Affidavit and Documents).

[26] [D.E. 52 at 163:17–22] (Petitioner's deposition); [D.E. 63-4 at 77:10–12; 77:13–15; 77:16–18; 20:17–21:21] (Ronald Parker's deposition); [D.E. 63-5 at 81:10–13; 83:22–24; 83:25–84:2; 84:3–12; 14:6–15:14] (Steven Parker's deposition); [D.E. 63-19 at 134:1–135:15] (Myrlande Tania Parker's deposition).

[27] [D.E. 52 at 164:1–6] (Petitioner's deposition); [D.E. 63-12] (Petitioner's Haitian Birth Certificate); [D.E. 63-4 at 91:21–92:8; 20:17–21:21] (Ronald Parker's deposition); [D.E. 63-5 at 86:4–7; 86:8–15; 87:3–6; 87:11–88:19; 14:6–15:14] (Steven Parker's deposition).

[28] [D.E. 52 at 164:7–11] (Petitioner's deposition); [D.E. 63-12] (Petitioner's Haitian Birth Certificate); [D.E. 63-4 at 91:21–92:8; 20:17–21:21] (Ronald Parker's deposition); [D.E. 63-5 at 86:4–7; 86:8–15; 87:3–6; 87:11–88:19; 14:6–15:14] (Steven Parker's deposition).

[29] [D.E. 52 at 164:12–17] (Petitioner's deposition); [D.E. 63-9] (IIRC Affidavit and Documents); [D.E. 63-4 at 91:21–92:8; 20:17–21:21] (Ronald Parker's deposition); [D.E. 63-5 at 86:4–7; 86:8–15; 87:3–6; 87:11–88:19; 14:6–15:14] (Steven Parker's deposition); [D.E. 63-20 at 96:22–97:10] (Sonia Antoine Federic's deposition).

28. Petitioner is aware of no photographs of his mother and the U.S. citizen he claims was his father.[30]

29. Petitioner has no witnesses who can corroborate that his mother had a relationship with the U.S. citizen he claims was his father.[31]

30. Petitioner is aware of no person who can corroborate that his mother had a relationship with the U.S. citizen he claims was his father.[32]

31. Petitioner has no evidence of any kind that his mother ever met the U.S. citizen he claims was his father.[33]

32. Petitioner's father is a Canadian man named Nick Parker.[34]

---

[30] [D.E. 52 at 164:18–22] (Petitioner's deposition); [D.E. 63-12] (Petitioner's Haitian Birth Certificate); [D.E. 63-4 at 91:21–92:8; 20:17–21:21] (Ronald Parker's deposition); [D.E. 63-5 at 86:4–7; 86:8–15; 87:3–6; 87:11–88:19; 14:6–15:14] (Steven Parker's deposition).

[31] [D.E. 52 at 165:1–5] (Petitioner's deposition); [D.E. 63-12] (Petitioner's Haitian Birth Certificate); [D.E. 63-4 at 91:21–92:8; 113:21–23; 113:25–114:6; 118:11–22; 119:22–120:4; 20:17–21:21] (Ronald Parker's deposition); [D.E. 63-5 at 86:4–7; 86:8–15; 87:3–6; 87:11–88:19; 14:6–15:14] (Steven Parker's deposition).

[32] [D.E. 52 at 165:1–5] (Petitioner's deposition); [D.E. 63-12] (Petitioner's Haitian Birth Certificate); [D.E. 63-4 at 91:21–92:8; 113:21–23; 113:25–114:6; 118:11–22; 119:22–120:4; 20:17–21:21] (Ronald Parker's deposition); [D.E. 63-5 at 86:4–7; 86:8–15; 87:3–6; 87:11–88:19; 14:6–15:14] (Steven Parker's deposition).

[33] [D.E. 52 at 165:1–5] (Petitioner's deposition); [D.E. 63-12] (Petitioner's Haitian Birth Certificate); [D.E. 63-4 at 91:21–92:8; 113:21–23; 113:25–114:6; 118:11–22; 119:22–120:4; 20:17–21:21] (Ronald Parker's deposition); [D.E. 63-5 at 86:4–7; 86:8–15; 87:3–6; 87:11–88:19; 14:6–15:14] (Steven Parker's deposition).

[34] [D.E. 52 at 170:7–10] (Petitioner's deposition); [D.E. 63-9] (IIRC Affidavit and Documents); [D.E. 63-11] (TECs Record); [D.E. 63-4 at 77:10–12; 77:13–15; 77:16–18; 80:18–20; 94:21–23; 110:1–4; 110:10–14; 117:15–20; 20:17–21:21] (Ronald Parker's deposition); [D.E. 63-5 at 24:5–14; 43:19–21; 55:3–6; 69:10–11; 81:10–13; 83:22–24; 83:25–84:2; 84:3–12; 14:6–15:14] (Steven Parker's deposition).

33. Petitioner's father is the Canadian man named Nick Parker who is discussed in Exhibit 6 to Petitioner's deposition, the TECS record.[35]

34. Petitioner does not know for sure whether the Canadian man or the U.S. man might be his father.[36]

35. Petitioner has no evidence that his father was both a U.S. citizen and a Canadian citizen.[37]

36. Nick Parker, born in Minnesota, was only a citizen of the U.S. and not a citizen of Canada.[38]

37. Petitioner never visited or resided with Nick James Parker, aka Nick James Poppys, born in Minnesota in or around 1920.[39]

38. Petitioner has no witnesses with knowledge of the allegation that Nick James Parker, aka Nick James Poppys, born in Minnesota in or around

---

[35] [D.E. 52 at 170:11–15] (Petitioner's deposition); [D.E. 63-11] (TECS record); [D.E. 63-4 at 77:10–12; 77:13–15; 77:16–18; 94:21–23; 110:1–4; 110:10–14; 117:15–20; 20:17–21:21] (Ronald Parker's deposition); [D.E. 63-5 at 24:5–14; 43:19–21; 55:3–6; 69:10–11; 83:25–84:2; 84:3–12; 14:6–15:14] (Steven Parker's deposition).

[36] [D.E. 52 at 185:5–9] (Petitioner's deposition); [D.E. 63-17] (Department of Homeland Security Decision); [D.E. 63-18] (USCIS Decision); [D.E. 63-4 at 78:9–11] (Ronald Parker's deposition); [D.E. 63-5 at 43:19–21; 69:10–11; 83:25–84:2; 84:3–12; 14:6–15:14] (Steven Parker's deposition).

[37] [D.E. 52 at 191:2–10] (Petitioner's deposition); [D.E. 63-9] (IIRC Affidavit and Documents); [D.E. 63-15] (James A. Poppys' Minnesota Birth Certificate); [D.E. 63-4 at 29:5–14; 77:10–12; 77:13–15; 77:16–18; 80:18–20; 94:21–23; 117:24–118:6; 20:17–21:21] (Ronald Parker's deposition); [D.E. 63-5 at 24:5–14; 43:19–21; 55:3–6; 69:10–11; 14:6–15:14] (Steven Parker's deposition).

[38] [D.E. 52 at 191:11–22] (Petitioner's deposition); [D.E. 63-4 at 29:5–14; 20:17–21:21] (Ronald Parker's deposition); [D.E. 63-5 at 43:19–21; 69:10–11; 14:6–15:14] (Steven Parker's deposition).

[39] [D.E. 63-6] (Respondent's First Set of Interrogatories); [D.E. 63-8] (Bode Tech Expert Report); [D.E. 63-4 at 77:13–15; 77:16–18; 98:1–11; 20:17–21:21] (Ronald Parker's deposition); [D.E. 63-5 at 55:3–6; 81:6–9; 81:10–13; 84:3–12; 14:6–15:14] (Steven Parker's deposition).

1920, appeared before Haitian officials in or around 1990, or at any other time, and declared Petitioner his natural born son.[40]

### III.   CONCLUSION

For the reasons set forth above, Respondent's Motion for Adverse Inferences Against Petitioner [D.E. 63] is **GRANTED**.

**DONE and ORDERED** in Chambers at Miami, Florida this 6th day of May, 2025.

*/s/ Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge

---

[40] [D.E. 63-6] (Respondent's First Set of Interrogatories); [D.E. 63-8] (Bode Tech Expert Report); [D.E. 63-4 at 67:5–11; 74:15–17; 77:10–12; 77:13–15; 77:16–18; 98:1–11; 110:10–14; 117:15–20; 20:17–21:21] (Ronald Parker's deposition); [D.E. 63-5 at 55:3–6; 81:6–9; 81:10–13; 84:3–12; 14:6–15:14] (Steven Parker's deposition).