UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-21388-BLOOM/Torres

EMILE PARKER,

    Petitioner

v.

U.S. ATTORNEY GENERAL,

    Respondent.
_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Respondent United States Attorney General's Motion for Summary Judgment ("Motion"), ECF No. [82]. Petitioner Emile Parker filed a Response, ECF No. [88], to which Respondent filed a Reply. ECF No. [94]. The Court has reviewed the record, the supporting and opposing submissions,[1] the applicable law, and is otherwise fully advised. For the reasons that follow, Respondent's Motion is denied.

**I.    BACKGROUND**

Petitioner is currently facing an order of removal issued by the Department of Homeland Security, finding that Petitioner was deportable under Section 237 of the Immigration and Nationality Act as an alien convicted of an aggravated felony. ECF No. [1] at 2. Petitioner contests the order of removal, arguing that he is a United States citizen by virtue of his birth to a United States citizen father. *Id.* This case was remanded from the Eleventh Circuit Court of Appeals for the limited purpose of conducting a *de novo* hearing on Petitioner's nationality claim pursuant to

---

[1] Respondent filed a Statement of Material Facts, ECF No. [83], to which Petitioner filed a Response, ECF No. [87], and Respondent filed a Reply. ECF No. [96].

8 U.S.C. § 1252(b)(5)(B). ECF No. [1] at 6.

It is undisputed that Petitioner was born on November 9, 1979 in Gressier, Haiti, to Sonia Antoine ("Ms. Federic") an unmarried citizen of Haiti. ECF No. [83] ¶ 1. It is also undisputed that a man named "Nick James Parker," who resided in Gressier, Haiti, appeared before Haitian civil authorities on February 4, 1980 and declared Petitioner to be his "natural son." ECF No. [83] ¶ 2. Petitioner argues that man was a United States citizen. ECF No. [88] at 7. Specifically, Petitioner argues that the man who declared Petitioner to be his son was Minnesotan Nick James Poppys,[2] who legally changed his name to Nick James Parker in 1952.[3] ECF Nos. [87] ¶ 89, [88] at 7. Respondent argues that Petitioner "cannot demonstrate a blood relationship to Nick Poppys" and that "the record establishes that Petitioner's father is a Canadian man named Nick Parker."[4] ECF No. [82] at 22.

The following facts are undisputed unless otherwise noted:

Petitioner was born on November 9, 1979 in Gressier, Haiti to Ms. Federic, an unmarried citizen of Haiti. ECF No. [83] ¶ 1. On February 4, 1980, "Nick James Parker," who resided in Gressier, appeared before Haitian civil authorities and declared Petitioner to be his "natural son." *Id.* ¶ 2. On May 23, 1990, Nick Parker, a Bulgarian-born Canadian citizen, applied for Canadian citizen for his "natural son," Petitioner. *Id.* ¶ 4. Nick George Parker executed the application for Canadian citizenship in Haiti and included Petitioner's Haitian birth certificate and a "Deed of Recognition." *Id.* ¶ 5. Each document listed "Nick Parker" as Petitioner's father. *Id.* In the application for Canadian citizenship, Nick Parker claimed Haitian residency since 1975. *Id.* ¶ 6.

---

[2] For clarity, the Court will refer to Nick James Poppys as "Nick Poppys."
[3] Petitioner stated that Nick James Poppys changed his name in 1952, ECF No. [87] ¶ 89; however, Respondent attached a document showing that Nick Poppys changed his name in 1951. ECF No. [96] ¶ 89 (citing ECF No. [82-87] at 3. This distinction is immaterial for purposes of this Motion.
[4] For clarity, the Court will refer to Canadian Nick Parker as "Nick Parker." It is undisputed that Nick Parker also went by the name Nick George Parker. ECF No. [83] ¶ 4.

Canada granted Petitioner's citizenship application in 1990. *Id.* ¶ 7. Petitioner holds a Canadian passport. *Id.* ¶ 8. When asked how he obtained Canadian citizenship, Petitioner failed to provide any explanation. *Id.*

Petitioner came to the United States with his mother prior to May 1995, when Petitioner filed a Form I-485, Application to Register Permanent Residence or Adjust Status with the Immigration and Naturalization Service ("INS"). *Id.* ¶ 9. In 1996, Petitioner was issued a Notice of Action by INS, identifying him as a "United States citizen" and "not deportable." ECF No. [87] ¶ 90. In February 2001, INS denied Petitioner's Form I-485 for failure to provide all necessary documentation. ECF No. [83] ¶ 10. Petitioner remained in Florida after INS denied his Form I-485. *Id.* ¶ 11.

Petitioner first claimed that he was a United States citizen in a sworn statement to a Customs and Border Protection ("CBP") officer on August 1, 2008. *Id.* ¶ 13. Petitioner made this claim after presenting a Canadian passport upon his arrival at Miami International Airport. *Id.* He also stated that he was a Canadian citizen and a Haitian national. *Id.* Petitioner provided a sworn statement to CBP, claiming he derived United States citizenship from his United States citizen father, Nick Parker, who was born in Bulgaria. *Id.* ¶ 14.

Respondent states, but Petitioner disputes, that CBP charged Petitioner with inadmissibility under 8 U.S.C. § 1182(a)(7)(A)(i)(I), as a noncitizen not in possession of a valid entry document and removed him to Canada. *Id.* ¶ 15. Respondent further states, and Petitioner disputes, that Petitioner attempted to reenter the United States from Canada on August 2, 2008. *Id.* ¶ 16.

On August 3, 2008, CBP officers apprehended Petitioner in Vermont. *Id.* ¶ 18. Petitioner falsely identified himself as "Nick Parker" and denied having just entered the United States from Canada. *Id.* The United States detained and prosecuted Petitioner for knowingly making false

statements to the Department of Homeland Security ("DHS") after his attempted reentry in 2008. *Id.* ¶ 19. On April 20, 2009, Petitioner pleaded guilty and was sentenced to time served plus two years of supervised release. *Id.* ¶ 20. Subsequently, Petitioner was paroled into the United States. *Id.* ¶ 21.

On May 1, 2009, Petitioner's attorney sent a letter to Immigration and Customs Enforcement ("ICE"), claiming that Petitioner was a United States citizen. *Id.* ¶ 22. Appended to the letter was a document purportedly issued by INS, labeled "Immigration – Notice of Action." ECF No. [83] ¶ 23. The document was purported to be sent to the Florida Department of Corrections in December 1996. *Id.* The Notice contained a checkmark next to the statement that "subject is a United States citizen, therefore is not deportable." *Id.* ¶ 24. United States Citizenship and Immigration Services ("USCIS") confirmed that the Notice was not in Petitioner's physical paper Alien File or USCIS electronic records and instead was obtained through Petitioner's attorney. *Id.* ¶ 31. USCIS Officer Fresia Duque stated that the INS Notice of Action "was in fact wrong" and that "it is not a stand-alone determination of citizenship nor was it ever intended to be a determination of citizenship." *Id.* (quoting ECF No. [82-3] ¶¶ 14-15).

Petitioner's wife, Myrlande Parker, ("Ms. Parker"), testified that while she was with Petitioner during his August 1, 2008 CBP encounter at Miami International Airport, she was not with him in secondary because CBP separated them. *Id.* ¶ 26. Referencing her second-hand knowledge of the INS Notice of Action, Ms. Parker stated that Petitioner presented paperwork from 1996—which she understood to be the INS Notice regarding Petitioner's citizenship—when he faced expedited removal. *Id.* Petitioner confirmed that his wife's knowledge of his citizenship claim is based on what he told her. *Id.* ¶ 28.

On January 25, 2011, Petitioner filed a Form N-600 Application for Certificate of

4

Citizenship with USCIS, claiming United States citizenship through his purported father, Nick James Poppys (a/k/a Nick James Parker). *Id.* ¶ 32. Appended to the Form N-600 were birth and death certificates for Nick James Poppys, a United States citizen who was born in Minnesota on April 17, 1920, and died on July 12, 2007 in Florida. *Id.* ¶ 33. Petitioner provided two Haitian birth certificates issued in 2010, and a paternity legitimation certificate allegedly claiming that Nick James Parker legitimated Petitioner in Haiti in 1990. *Id.* ¶ 34. USCIS denied the Form N-600 because it determined that both birth certificates and the legitimation certificate submitted with Petitioner's application were fraudulent. *Id.* ¶ 35.

In November 2012, Petitioner was arrested, and later convicted, for attempted sexual battery on a child under 12, and attempted lewd and lascivious molestation on a child under 12. *Id.* ¶ 36. In June 2021, Petitioner was released to DHS custody upon early completion of his Florida criminal sentence. *Id.* On June 22, 2021, DHS issued a Final Administrative Removal Order ("FARO") finding Petitioner removable under 8 U.S.C. § 1227(a)(2)(A)(iii), as a noncitizen convicted of an aggravated felony defined under 8 U.S.C. §§ 1101(a)(43)(B) and (G), on the basis of his Florida convictions. *Id.* ¶ 37.

Petitioner submitted to DHS a request to reconsider and rescind the issuance of the FARO because, he contended, he acquired citizenship as a child born out of wedlock to a United States citizen under 8 U.S.C. § 1409(a). *Id.* ¶ 38. In support of this request, Petitioner appended an extract of his Haitian birth certificate, issued in 2013, but not previously presented to DHS. *Id.* ¶ 39. DHS did not rescind the FARO. *Id.* ¶ 41. In January 2022, after consultation with the United States State Department, the government acknowledged that extracts of Petitioner's birth certificates from 2013 and 2021, submitted to DHS, were authentic. *Id.* ¶ 42.

Petitioner was released from DHS custody on January 13, 2022, and USCIS reopened

Petitioner's previously denied Form N-600 to further evaluate his citizenship claim. *Id.* ¶ 43. USCIS denied the reopened Form N-600 on May 18, 2022, after it determined that Petitioner had not established he was born to a United States citizen father. *Id.* ¶ 44. Regarding the May 2022 N-600 denial, USCIS cited an entry record pertaining to a Canadian man named Nick Parker, "rais[ing] doubt about which Nick Parker is [Petitioner's] father." *Id.* ¶ 45. The entry record documented a November 2, 2006 CBP encounter at Miami International Airport with an individual named Nick Parker, born on July 1, 1929, who entered the United States on a Canadian passport. *Id.* ¶ 46. CBP questioned Canadian Nick Parker at a secondary inspection; he indicated he was traveling to visit his son, Emile Parker. *Id.* ¶ 47.

In April 2022, Petitioner applied for, and received, a renewed Canadian passport. *Id.* ¶ 49. The application listed Petitioner's father as Nick Parker with a date of birth of July 1, 1929, in Bulgaria. *Id.* ¶ 50. Petitioner has two Haitian birth certificates, one issued in 1980 and one reissued in 2021, both identifying "Nick James Parker" as his father. ECF No. [87] ¶ 92. The 1980 birth certificate listing Nick James Parker as Petitioner's father was verified by the U.S. Department of State in 2013. *Id.* ¶ 93.

Ms. Federic testified that Nick James Parker told her he was born in Minnesota and that he never went by any other name. ECF No. *Id.* ¶ 95. Ms. Federic stated that Petitioner's father resided in Haiti from the time of Petitioner's birth in 1979 until approximately 1994. ECF No. [83] ¶ 87. Ms. Federic added that when she came to the United States in 1990, Petitioner remained in Haiti in his father's custody until he came to live with his mother in the United States in approximately 1994. *Id.*

Ms. Parker testified that Petitioner told her that his father was Nick James Parker, a United States citizen born in Minnesota. ECF No. [87] ¶ 97. Ms. Parker testified that she had no doubt

that Petitioner was a United States citizen based on what Petitioner told her and what she observed during their 2009 immigration encounter. *Id.*

Respondent states, and Petitioner disputes, that during discovery, Respondent identified at least two known biological children of Nick Poppys: Steven Parker and Ronald Parker. ECF No. [83] ¶ 51. It is undisputed that both Steven Parker and Ronald Parker agreed to provide DNA samples to compare with that of Petitioner. *Id.* ¶ 54. Petitioner was ordered by the court to provide a DNA sample. *Id.* ¶ 72. Steven Parker, Ronald Parker, and Petitioner all provided saliva samples for DNA testing. *Id.* ¶¶ 70, 71, 73. At the time Petitioner provided his sample, he was in state custody and under the supervision of the Jackson Correctional Institute. *Id.* ¶ 73.

Respondent's expert witness, Karl Miyasako ("Mr. Miyasako"), analyzed each saliva sample by a process called Y-STR analysis where "DNA typing by analysis of Short Tandem Repeat (STR) loci specific to the Y chromosome (also called Y-STRs)" identities common paternal relatives; the test is a validated procedure for determining paternal lineage complying with the FBI's Quality Assurance Standards for Forensic DNA Testing Laboratories. *Id.* ¶ 75 (quoting ECF No. [82-15]). Mr. Miyasako issued a report in which he concluded that "Ron Parker cannot be excluded as a paternal relative of Steven Parker. In addition, all patrilineal related male relatives cannot be excluded." *Id.* ¶ 77 (quoting ECF No. [82-15]). The report further concluded that "[b]ased on the Y-STR testing of the submitted specimens Petitioner is excluded as being from a paternal relative of Steven Parker and Ron Parker." *Id.* ¶ 78 (quoting ECF No. [82-15]).

Respondent argues that it is entitled to summary judgment because Petitioner "a native and citizen of Haiti, failed to meet his burden to establish he derived United States citizenship through the man he claims is his father." ECF No. [82] at 7. Petitioner responds that "[t]he parties genuinely dispute that Petitioner is a U.S. citizen under each element of 8 U.S.C. § 1409." ECF No. [88] at

2. Specifically, Petitioner argues that (1) Respondent "heavily relies on an indefinite DNA test comparing Petitioner to two alleged sons of Nick James Parker[;]" (2) Respondent's "testimonial evidence [is] contradicted by Petitioner's documentation[;]" and (3) "sworn testimony from Petitioner's mother and wife further supports [Petitioner's] claim." ECF No. [88] at 2.

## II.    LEGAL STANDARD

On a motion for summary judgment, "the evidence of the non-movant is to be believed." *United States v. Four Parcels of Real Prop.* 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "The district court should 'resolve all reasonable doubts about the facts in favor of the non-movant[.]" *Id.* (quoting *Browning v. Peyton*, 918 F.2d 1516, 1520 (11th Cir. 1990)).

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). However, "'[w]hen the nonmoving party has the burden of proof at trial,' the party moving for summary judgment can proceed in one of two ways." *Pizarro v. Home Depot, Inc.*, 111 F.4th 1165, 1173 (11th Cir. 2024) (quoting *Four Parcels of Real Prop.* 941 F.2d at 1437-38). The moving party may demonstrate "that there is an absence of evidence to support the non-moving party's case. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be unable to prove its case at

trial." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116-17 (11th Cir. 1993) (quoting *Four Parcels of Real Prop.*, 941 F.2d at 1437-38). "If the moving party shows the absence of a triable issue of fact by either method, the burden on summary judgment shifts to the nonmoving party, who must show that a genuine issue remains for trial." *Pizarro*, 111 F.4th at 1173. (quoting *Four Parcels of Real Prop.*, 941 F.2d at 1438). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (quoting *Anderson*, 477 U.S. at 252. "If the nonmoving party fails to make this showing, the moving party is entitled to summary judgment." *Pizarro*, 111 F.4th at 1173.

Federal Rule of Civil Procedure 56(c) states that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

"A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247-48). At the summary judgment stage, the court "may not weigh conflicting evidence to resolve disputed factual issues[.]" *Torres v. Rock & River Food Inc.*, 244 F. Supp. 3d 1320, 1327 (S.D. Fla. 2016) (quoting *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007)).

Case No. 23-cv-21388-BLOOM/Torres

### III. DISCUSSION

#### A. Burden of Proof

As an initial matter, the parties disagree on the standard that governs a nationality claim transferred to a district court from the court of appeals under 8 U.S.C. § 1252(b)(5)(B). Section 1252(b)(5)(B) states:

> If the petitioner claims to be a national of the United States and the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented, the court shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim and a decision on that claim as if an action had been brought in the district court under section 2201 of title 28.

8 U.S.C. § 1252(b)(5)(B).

Section 2201 of Title 28 permits "any court of the United States" to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a).

It is undisputed that Petitioner was born in Haiti to Ms. Federic, an unmarried Haitian citizen. ECF No. [83] ¶ 1. Petitioner states "Section 1252(b)(5)(B) directs the district court to resolve the citizenship claim under the pertinent statute (in this case, Section 1409) if the appellate court concludes that a genuine issue of material fact exists." ECF No. [88] at 4. Petitioner also argues that "[n]either 8 U.S.C. § 1252(b)(5)(B) nor the Supreme Court has expressly defined the burden of proof in determining citizenship." *Id.* However, as the Eleventh Circuit noted in its order, section 1409 does establish a burden of proof. Section 1409 states:

> a person born outside the United States and out of wedlock to a United States citizen father and a noncitizen mother is a United States citizen and national from birth if the father met certain physical-presence requirements and: (1) a blood relationship to the father is established by clear and convincing evidence; (2) the father had the nationality of the United States at the time of the person's birth; (3) the father (if

10

> living) has agreed in writing to provide financial support for the person until he reaches the age of 18; and (4) while the person is under the age of 18, the person is legitimated under the law of his residence or domicile, the father acknowledges paternity in writing under oath, or paternity is established by adjudication of a competent court.

ECF No. [1] at 3-4 (summarizing 8 U.S.C. § 1409).

The statute expressly states that "a blood relationship between the person and the father" must be "established by clear and convincing evidence." 8 U.S.C. § 1409(a)(1). Therefore, at trial, Petitioner would be required to prove "by clear and convincing evidence" that there is a blood relationship between him and the man he states is his father. *Id.* However, because Respondent has moved for summary judgment, it carries the burden on summary judgment by demonstrating that "there is an absence of evidence to support [Petitioner's] case" or through "affirmative evidence demonstrating that [Petitioner] will be unable to prove [his] case at trial." *Fitzpatrick*, 2 F.3d at 1116-17 (quoting *Parcels of Real Prop.* 941 F.2d at 1437-38).

### B. Factual Disputes

Respondent argues it is entitled to summary judgment for three reasons. First, "DNA evidence conclusively establishes that Nick Poppys, the individual whom Petitioner identifies as his U.S. Citizen father, is not his biological father." ECF No. [82] at 7. Second, "Petitioner's biological father is actually Nick Parker—a Canadian citizen who never held U.S. citizenship." *Id.* at 8. Third, Respondent argues Petitioner "generally fails to provide proof that he meets the remaining requirements of 8 U.S.C. § 1409(a)(3) and (a)(4)[.]" *Id.* Petitioner argues "the record, when viewed in the light most favorable to Petitioner, presents genuine issues of material fact concerning (1) the identity and nationality of Petitioner's biological father; (2) whether Petitioner received financial support from his biological father as a minor; and (3) whether Petitioner's father acknowledged paternity under oath." ECF No. [88] at 6.

Because Petitioner would bear the burden of proving his citizenship at trial, the Court first considers whether Respondent has demonstrated "that there is an absence of evidence to support the non-moving party's case" or provided "affirmative evidence demonstrating that [Petitioner] will be unable to prove [his] case at trial." *Fitzpatrick*, 2 F.3d at 1116-17 (quoting *Four Parcels of Real Prop.*, 941 F.2d at 1437-38).

To the extent Respondent argues that the DNA evidence "conclusively ruled out any biological link between Petitioner and Poppys," ECF No. [82] at 19, Petitioner argues that "[t]he DNA test did not compare Petitioner's DNA to that of [Nick Poppys], nor did it compare Steven and Ronald[] [Parker's] DNA to that of [Nick Poppys]." ECF No. [88] at 7. Therefore, "[a]t most, the DNA test on record proves that Steven and Ronald Parker do not share a father with Petitioner." *Id.* Because Nick Poppys "was deceased at the time the DNA testing was done . . . it would have been, and is, impossible for Respondent to obtain conclusive DNA evidence establishing that Nick [Poppys] is not Petitioner's biological father." *Id.* Respondent points out that "Petitioner presents no evidence to rebut the testimony of Steven and Ronald Parker or to otherwise show a reason to doubt their credible, consistent testimony, which alone is sufficient to demonstrate they are the children of Nick Poppys." ECF No. [94] at 4. However, Petitioner responds that the testimony of Steven and Ronald Parker "conflicts with the testimony of Petitioner's wife and mother, who both testified to Nick James Parker being Petitioner's father." ECF No. [88] at 7-8. It is undisputed that Ms. Federic "testified that Nick James Parker told her he was born in Minnesota and that he never went by any other name." ECF No. [87] ¶ 95. Respondent argues that because Petitioner has submitted "no expert affidavit or scientific evidence to call into question the DNA test results," Petitioner's theory that the test is 'inconclusive' . . . is pure conjecture, which cannot create a triable issue." ECF No. [94] at 5. However, Petitioner does not argue that the DNA test is

12

unreliable, but that Respondent seeks to make an inference that extends beyond the actual results of the test. The Court cannot state as a matter of law that the DNA evidence provides "conclusive proof that Petitioner is not biologically related to Nick Poppys" because such a conclusion would require weighing the credibility of Steven and Ronald Parker's testimony against that of Ms. Federic. ECF No. [82] at 19.

To the extent Respondent argues that "the record establishes that Petitioner's father is a Canadian man named Nick Parker[,]" such a conclusion would also require that the Court weigh the credibility of conflicting evidence. ECF No. [82] at 16. "Petitioner's mother . . . testified under oath that she met Nick James Parker in Haiti and that Nick James Parker told her he was born in the United States[.]" ECF No. [88] at 9. Although "Petitioner does not rebut the documentary evidence establishing Nick [P]arker's Canadian nationality[,]" it will be the duty of the factfinder, not the Court on a motion for summary judgment, to determine whether the documentary evidence that Respondent cites outweighs the evidence presented by Petitioner. ECF No. [94] at 6.

Respondent also argues that Petitioner cannot satisfy the remaining requirements of 8 U.S.C. § 1409(a), specifically that "the father agreed in writing to provide financial support until the child reaches age 18" and that, "before the child turned 18: the child was legitimated under the law of . . . his residence or domicile; the father acknowledged paternity under oath; or paternity was adjudicated by a competent court." ECF No. [82] at 25. The requirement that the father "has agreed in writing to provide financial support for the person until the person reaches the age of 18 years" applies "unless [the father is] deceased[.]" 8 U.S.C. § 1409(a)(3). Both parties agree that Nick Poppys—the man who Petitioner asserts is his father—is deceased. *See* ECF Nos. [88] at 7, ECF No. [94] at 5. Therefore, by the plain language of the statute, section 1409(a)(3) would not apply to Petitioner.

13

Section 1409(a)(4) imposes the additional requirement that, while the child is under 18, "(A) the person is legitimated under the law of the person's residence or domicile, (B) the father acknowledges paternity of the person in writing under oath, or (C) the paternity of the person is established by adjudication of a competent court." 8 U.S.C. § 1409(a)(4). Petitioner states that "while Petitioner was still a minor, Nick James Parker executed an Act of Recognition—a notarized acknowledgment of paternity under Haitian law—formally recognizing Petitioner as his son." ECF No. [88] at 12. This document, Petitioner argues, satisfies the section 1409(a)(4) requirement. *Id.* at 12-13. Respondent argues that because the Act of Recognition was signed by Nick Parker, not Nick Poppys, it cannot satisfy section 1409(a)(4)(B). ECF No. [94] at 10. However, whether Nick Parker or Nick Poppys is Petitioner's father remains a genuine dispute of material fact. Petitioner cites his "original 1980 birth certificate issued in Haiti, which lists 'Nick James Parker' as his father." *Id.* at 12. Respondent does not argue that the Act of Recognition fails to satisfy section 1409(a)(4)(B) as a matter of law. Rather, it rests its argument on the factual determination that the man who signed the Act of Recognition was a Canadian citizen. *Id.* at 9-10.

Respondent argues that Petitioner presents "an implausible theory that Nick Poppys led a secret life in Haiti for over 15 years without the knowledge of his family, unsupported by any tangible proof." ECF No. [94] at 7. However, it is undisputed that Ms. Federic testified that Nick James Parker told her he was born in Minnesota. ECF No. [96] ¶ 95. It is also undisputed that, on February 4, 1980, Nick James Parker, who resided in Gressier, Haiti, appeared before Haitian civil authorities and declared Petitioner to be his natural son. ECF No. [83] ¶ 2. To the extent Respondent argues that Petitioner's theory is "implausible," the Court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

14

Because there remain genuine disputes of material fact[5] as to every applicable element of 8 U.S.C. § 1409(a), the Motion is denied.

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Respondent's Motion for Summary Judgment, **ECF No. [82],** is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida on June 16, 2025.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

---

[5] On October 4, 2024, the Court referred Respondent's Motion *in Limine* for Adverse Inferences, ECF No. [63], to Magistrate Judge Edwin G. Torres for a Report and Recommendations. ECF No. [86]. On May 6, 2025, Judge Torres granted the Motion *in Limine*. ECF No. [97]. However, before Respondent's Motion was granted, it argued that "even without any adverse inference, no genuine issue of material fact precludes summary judgment. However, granting the adverse inferences would further bolster the government's entitlement to judgment." ECF No. [82] at 15 n.4. Regarding the adverse inferences, it is well established that the trier of fact may infer that, had Petitioner not asserted his Fifth Amendment privilege, "the answers to the questions would not have been favorable" to him. *United States v. Two Parcels of Real Prop.*, 92 F.3d 1123, 1129 (11th Cir. 1996). However, those adverse inferences would still require the Court to weigh conflicting evidence to determine whether a genuine dispute of material fact exists. As such, the adverse inferences do not affect the Court's analysis for purposes of this Motion.