UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-21388-BLOOM/TORRES

EMILE PARKER,
*a.k.a. Andein Jean-Pierre*,

      Petitioner,

v.

U.S. ATTORNEY GENERAL,

      Respondent.

_____/

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**THIS CAUSE** is before the Court following a bench trial held on February 18, 2026. ECF No. [131]. Petitioner Emile Parker ("Petitioner"), represented by counsel, and Respondent, U.S. Attorney General ("Government"), represented by counsel, appeared and presented their cases. The Court has considered the testimony of the witnesses, the documents admitted into evidence, argument of counsel, the record in the case, the applicable law, and is otherwise fully advised. The Court makes the following findings of fact and conclusions of law.

## I.      BACKGROUND

Petitioner petitioned the Eleventh Circuit Court of Appeals for review of a final administrative order of removal issued by the Department of Homeland Security ("DHS"). *See* ECF No. [1] at 2. DHS determined Petitioner was deportable under 8 U.S.C. § 1227(a)(2)(A)(iii) as a noncitizen convicted of an aggravated felony. *Id.* Petitioner challenges DHS's order of removal and asserts he is a U.S. citizen. *Id.* He alleges that he was born out of wedlock to a noncitizen mother and a U.S. citizen father and meets all requirements to be a citizen under 8 U.S.C. § 1409(a). *Id.* The Government disagrees. *Id.* at 3.

Case No. 23-cv-21388-BLOOM/TORRES

Petitioner identifies U.S. citizen Nick James Parker, formerly Nick James Poppys, as his father. *Id.* at 4. The Government disputes Nick James Poppys is Petitioner's father and instead alleges Canadian citizen Nick George Parker may be Petitioner's father.[1] The Eleventh Circuit determined that the disagreement regarding Petitioner's father creates a genuine dispute of material fact as to Petitioner's citizenship and transferred Petitioner's case to this Court to conduct a *de novo* hearing on Petitioner's nationality claim. *Id. See also* 8 U.S.C. § 1252(b)(5)(B).[2]

## II.    FINDINGS OF FACT

The Court makes the following findings of fact based on the evidence presented.[3]

### A.  Biographical Facts

Petitioner was born on November 9, 1979, in Gressier, Haiti, to Sonia Antoine ("Ms. Antoine"), an unmarried citizen of Haiti. ECF No [110]. Haitian birth records and Deeds of Recognition indicate that a man named "Nick Parker," "Nicolas Parker," or "Nick James Parker," who resided in Gressier, Haiti, appeared before Haitian civil authorities on February 4, 1980, and February 5, 1990, and declared Petitioner to be his "natural son." *Id.* Petitioner has three Haitian birth certificates: one issued in 1979, identifying "Nicolas Parker" as his father; one issued in 2013, identifying "Nick James Parker" as his father; and a third, reissued in 2021, also identifying "Nick James Parker" as his father. *Id.*

---

[1] For clarity, the Court will refer to Nick James Poppys (n/k/a Nick James Parker) as "Nick Poppys" and Nick George Parker as "Nick Parker."

[2] Section 1252(b)(5)(B) states: "If the petitioner claims to be a national of the United States and the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented, the court shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim and a decision on that claim as if an action had been brought in the district court under section 2201 of Title 28." 8 U.S.C. §1252(b)(5)(B).

[3] The Court makes these factual findings based on the uncontested facts presented in the parties' Joint Pretrial Stipulation, ECF No. [110]; the testimony of witnesses Steven Parker, Fresia Duque, and Karl Miyasako, ECF No. [131]; and the exhibits admitted at trial, ECF No. [132].

Nick James Poppys ("Nick Poppys") is a U.S. citizen and was born on April 17, 1920, in Minnesota. ECF No. [132-25]. There is no evidence he was a citizen of any other country. Nick Poppys and Dolores Lucille Conlin had a son, Steven Poppys, born on April 8, 1948, in Los Angeles, California. ECF No. [132-12]. On March 16, 1951, Nick Poppys and Dolores Poppys obtained a Decree from the State of Hawaii changing their surname, and that of their son, Steven, from Poppys to Parker. ECF No. [132-13]. Nick Poppys and Marjory Joan Rouille had a son, Ronald ("Ron") Parker, born on June 3, 1957, in Orange, California. ECF No. [132-14]. Nick Poppys lived in Minnesota and moved to Florida when he retired. He resided in Sumter County, Florida, from at least 1998 until his death in 2007. *See* ECF Nos. [110], [132-27].

Nick George Parker ("Nick Parker") was born on July 1, 1929, in Bulgaria and is a Canadian citizen. *See* ECF Nos. [132-2], [132-5]. On May 23, 1990, Nick Parker applied for Canadian citizenship for his "natural son," Emile Parker. ECF No. [132-5]. Nick Parker executed the application for Canadian citizenship in Haiti and included Petitioner's Haitian birth certificate and a "Deed of Recognition." *Id.* Each document listed "Nick Parker" as Petitioner's father. *Id.* In the application for Canadian citizenship, Nick Parker claimed he has lived in Haiti since 1977. *Id.* Canada granted Petitioner's citizenship application in 1990. ECF No. [110]. Petitioner holds a Canadian passport. ECF No. [132-1].

### B. Petitioner's Immigration History

Petitioner came to the United States with his mother prior to May 1995, when Petitioner filed a Form I-485, Application to Register Permanent Residence or Adjust Status with the Immigration and Naturalization Service ("INS").[4] ECF No [110]. In February 2001, INS denied Petitioner's Form I-485 for failure to provide all necessary documentation, including information

---

[4] INS existed prior to 2003 when the Department of Homeland Security and USCIS were established.

about an arrest. *Id.* Petitioner remained in Florida after INS denied his Form I-485. ECF No. [132-18]. In December 1996, INS issued a Notice of Action addressed to the Florida Department of Corrections indicating that Petitioner, who was an inmate, "is a United States citizen, therefore is not deportable." *See* ECF No. [132-30]. The Notice of Action was signed by the Assistant District Director for Investigations. *Id.*

On August 1, 2008, Petitioner arrived at Miami International Airport and presented his Canadian passport. ECF No. [132-16]. In a sworn statement to a Customs and Border Protection ("CBP") officer, Petitioner claimed to be a U.S. citizen, a Canadian citizen, and a Haitian national. *Id.* In this sworn statement, he claimed he derived U.S. citizenship from his U.S. citizen father, Nick Parker, who was born in Bulgaria. *Id.* at 4. CBP notified Petitioner that he was inadmissible based on his criminal history and would be returned to his country of citizenship, Canada, on the first available flight. *Id.* at 5-6. CBP also informed Petitioner he was barred from entering the United States for at least five years. ECF No. [132-20].

### C. USCIS Determination of Citizenship

On January 25, 2011, Petitioner filed a Form N-600 Application for Certificate Citizenship ("N-600 Application") with USCIS, claiming U.S. citizenship through his purported father, Nick James Poppys (a/k/a Nick James Parker). ECF No. [132-19]. Appended to the Form N-600 were birth and death certificates for Nick Poppys. ECF No. [110]. Petitioner provided two Haitian birth certificates issued in 2010 and a paternity legitimation certificate allegedly claiming that Nick James Parker legitimated Petitioner in Haiti in 1990. *Id.* USCIS denied Petitioner's N-600 Application because it determined that both birth certificates and the legitimation certificate submitted with Petitioner's application were fraudulent. ECF No. [132-3].

In November 2012, Petitioner was arrested and convicted of an aggravated felony in Florida. ECF No. [110]. In June 2021, Petitioner was released to DHS custody upon early completion of his Florida criminal sentence. *Id.* On June 22, 2021, DHS issued a Final Administrative Removal Order ("FARO") finding Petitioner removable under 8 U.S.C. § 1227(a)(2)(A)(iii), as a noncitizen convicted of an aggravated felony defined under 8 U.S.C. §§ 1101(a)(43)(B) and (G), based on his Florida convictions. ECF No. [132-28]. Petitioner submitted to DHS a request to reconsider and rescind the issuance of the FARO because, he contended, he acquired citizenship as a child born out of wedlock to a U.S. citizen under 8 U.S.C. § 1409(a). ECF No. [132-29]. In support of his request, Petitioner attached an excerpt of his Haitian birth certificate, issued in 2013, but not previously presented to DHS. ECF No. [110]. DHS did not rescind the June 2021 FARO. *Id.* In January 2022, after consultation with the U.S. Department of State, the Government acknowledged that extracts of Petitioner's birth certificates from 2013 and 2021, submitted to DHS, were authentic. *Id.* DHS then released Petitioner from DHS custody on January 13, 2022, and USCIS reopened Petitioner's previously denied N-600 Application to further evaluate his citizenship claim. *Id.*

In April 2022, Petitioner applied for and received a renewed Canadian passport. ECF No. [110]. The application listed Petitioner's father as Nick Parker with a date of birth of July 1, 1929, in Bulgaria. ECF Nos. [110], [132-5]. When the Government asked Petitioner how he obtained Canadian citizenship, Petitioner failed to provide any explanation. ECF No. [110].

The Government's witness, Fresia Duque ("Ms. Duque"), a USCIS immigration officer who has worked with INS and then USCIS since 1998 and has adjudicated more than two thousand N-600 applications, testified that she was assigned to review Petitioner's N-600 Application. Upon review of Petitioner's Application, file, and available records, USCIS denied his N-600

Application on May 18, 2022, determining that Petitioner had not met his burden to establish he was born to a U.S. citizen father. ECF No. [132-4]. USCIS determined Petitioner "did not acquire citizenship at birth and [is] not eligible for a Certificate of Citizenship." *Id.* Ms. Duque's testimony also established that the 1996 INS Notice of Action indicating Petitioner was a U.S. citizen is not a determination of citizenship and that investigators with what was then INS do not adjudicate immigration benefits or determine citizenship applications.

Ms. Duque testified to inconsistencies in the record, which weighed heavily on her decision to deny Petitioner's N-600 Application. She pointed to inconsistent sworn statements Petitioner made about who his father is — at times claiming Nick Poppys, born in Minnesota, is his father and at other times claiming his father was born in Bulgaria and that he was a Canadian citizen. Petitioner's N-600 Application identified Nick Poppys as his father. *See* ECF No. [132-19]. However, his Alien file, records with DHS and INS, and records obtained from Immigration, Refugees and Citizenship Canada ("IRCC") indicate that his father is Nick Parker, born in 1929 in Bulgaria, who is a Canadian citizen. USCIS's denial also cited an entry record pertaining to a Canadian man named Nick Parker, "rais[ing] doubt about which Nick Parker is [Petitioner's] father." ECF No. [132-4]. The entry record documented a November 2, 2006, CBP encounter at Miami International Airport with an individual named Nick Parker, born on July 1, 1929, who entered the United States on a Canadian passport. ECF Nos. [132-2], [132-4]. CBP questioned Nick Parker, and he indicated he was traveling to visit his son, Emile Parker. *Id.* Nick Parker identified an address USCIS knew to belong to Petitioner. ECF No. [132-4].

### D. Petitioner's Relationship with Nick Poppys

The testimony of Nick Poppys' son Steven Parker and the deposition of his son Ronald Parker establish that between 1975 and 1982, Nick Poppys lived in Minnetonka, Minnesota.

Ronald Parker lived in Minnesota at that time and either saw or spoke with his parents every weekend. *See* ECF No. [132-17] at 44:11-48:16. During that time, Nick Poppys did not travel internationally and did not travel to Haiti.

Neither Nick Poppys nor any other family member ever mentioned to Steven Parker that Emile Parker was Nick Poppys' son. Steven Parker first learned who Emile Parker was in association with this case. Nick Poppys did not hold himself out as Petitioner's father. Nor did he make arrangements for any portion of his estate to devise to Petitioner upon his death. *See* ECF No. [132-15].

To Steven Parker's knowledge, Nick Poppys never travelled to Haiti nor did Nick Poppys travel from Canada to Florida in 2006 to visit Petitioner. Prior to Nick Poppys' death, from 2004-2006, he had severe health issues including diabetes and congestive heart failure. He was hospitalized regularly in 2006 and was not physically able to travel far distances, often traveling only to the hospital the next town over.

### E.  DNA Testing

On October 25, 2023, the Court granted the parties' joint motion and ordered Petitioner to provide a DNA sample for testing. ECF No. [32]. At the time Petitioner provided his sample, he was in state custody and under the supervision of Jackson Correctional Institute. *Id.* The Government's expert witness, Karl Miyasako ("Mr. Miyasako"), testified that he analyzed saliva samples received from Petitioner, Steven Parker, and Ronald Parker. DNA samples were not obtained from Nick Poppys, who is deceased, or Nick Parker. Mr. Miyasako analyzed the samples by a process called Y-STR analysis, which does "DNA typing by analysis of Short Tandem Repeat (STR) loci specific to the Y chromosome (also called Y-STRs)" to identify common paternal relatives. *See* ECF No. [132-6]. Y-STR analysis is a validated procedure for determining paternal

lineage and complies with the FBI's Quality Assurance Standards for Forensic DNA Testing Laboratories. *Id.* There is no indication that the DNA samples or testing were contaminated or compromised. Mr. Miyasako's report concludes that "Ron Parker cannot be excluded as a paternal relative of Steven Parker. In addition, all patrilineal related male relatives cannot be excluded." *Id.* The report further concludes that "Emile Parker is excluded as being from a paternal relative of Steven Parker and Ron Parker." *Id.*

### III. CONCLUSIONS OF LAW

As relevant to this case, 8 U.S.C. §§ 1401(g) and 1409(a) govern the transmission of citizenship at birth to children born outside the United States. Section 1401(g) establishes that a person born abroad to a noncitizen parent and a citizen parent is a U.S. citizen at birth, provided that the citizen parent meets certain requirements of physical presence in the United States. 8 U.S.C. § 1401(g). Section 1409(a) establishes the requirements for applying § 1401(g) to children born out of wedlock. 8 U.S.C. § 1409(a). The Eleventh Circuit summarized the applicable statutory provisions:

> Under 8 U.S.C. § 1409(a), a person born outside the United States and out of wedlock to a United States citizen father and a noncitizen mother is a United States citizen and national from birth if the father met certain physical-presence requirements and: (1) a blood relationship to the father is established by clear and convincing evidence; (2) the father had the nationality of the United States at the time of the person's birth; (3) the father (if living) has agreed in writing to provide financial support for the person until he reaches the age of 18; and (4) while the person is under the age of 18, the person is legitimated under the law of his residence or domicile, the father acknowledges paternity in writing under oath, or paternity is established by adjudication of a competent court.

ECF No. [1] at 3-4 (summarizing 8 U.S.C. §1409(a)).

Petitioner bears the burden of proving citizenship by a preponderance of the evidence,[5] except that he must show a blood relationship under § 1409(a)(1) by clear and convincing evidence. *See* 8 U.S.C. § 1409(a)(1). Any doubts about citizenship are resolved in favor of the Government. *See Berenyi v. Dist. Dir., INS*, 385 U.S. 630, 637 (1967). DNA evidence is admissible and relevant to the factual question of paternity. However, in *Nguyen v. I.N.S.*, 533 U.S. 53, 54 (2001), the U.S. Supreme Court concluded that DNA is not the exclusive or necessary means of proving paternity. The Court explained that "the Constitution does not require that Congress elect one particular mechanism from among many possible methods of establishing paternity," and 8 U.S.C. § 1409 "does not mandate DNA testing." *Id.* Instead, the statute allows paternity to be established by any one of several alternatives — including acknowledgment under oath and documentary evidence. *See id.*

Under § 1409(a), the threshold question is whether Petitioner has established by clear and convincing evidence that he has a blood relationship with a U.S. citizen father. It is only after that relationship is established that the father's nationality at the time of birth, acknowledgement of paternity, and financial support become relevant. Here, the parties dispute the identity of Petitioner's father. Thus, the threshold question is whether Petitioner has established that U.S. citizen Nick Poppys is his biological father. After evaluating the evidence, including the testimony and credibility of the witnesses, the Court concludes that Petitioner has not met his burden to

---

[5] In declaratory judgment actions under other sections of the Immigration Nationality Act, the Eleventh Circuit has held that the petitioner has the burden of proving U.S. citizenship by a preponderance of the evidence. *See Martinez v. Secretary of State*, 652 F. App'x 758, 761 (11th Cir. 2016) ("In a § 1503(a) declaratory judgment action, the plaintiff has the burden of proving that he is a U.S. citizen by a preponderance of the evidence."). Although the Eleventh Circuit has not expressly determined the burden of proof for declaratory actions under 8 U.S.C. § 1409, the parties agree Petitioner's burden is by a preponderance of the evidence. *See* ECF No. [110].

establish a blood relationship between Petitioner and Nick Poppys by clear and convincing evidence.

Petitioner contends that Nick Poppys travelled to Haiti, had a child with Ms. Antoine in November 1979, and returned to Haiti in 1980 and/or 1990 to declare Petitioner as his son. To support his contention, Petitioner identifies his birth records and Deeds of Recognition listing Nick James Parker as his father. *See* ECF Nos. [132-21]-[132-24]. Petitioner did not present any other evidence to establish his relationship with Nick Poppys.[6] Considering only the evidence presented by Petitioner, the Court concludes that inconsistencies in Petitioner's evidence — namely the multiple, inconsistent birth records[7] and Petitioner's contradicting sworn statements as to the nationality of his father — preclude such evidence from being sufficiently clear or convincing for Petitioner to meet his burden.

Not only did Petitioner fail to meet his burden to establish Nick Poppys is his father, there is overwhelming evidence that Nick Poppys is *not* Petitioner's father. Although DNA evidence is not required to prove paternity, the Court finds the DNA testing performed in this case to be highly probative. The Government did not present direct DNA evidence of the relationship between

---

[6] Several pre-trial orders impacted the presentation of Petitioner's case. *See* ECF Nos. [58], [80], and [97]. As a result of Petitioner's failure to comply with discovery and the Court's orders, the Court issued Rule 37 sanctions, precluding Petitioner "from offering (1) any witness testimony, including testimony from Petitioner; (2) any witness declarations, signed affidavits, or other writings made by any person; and (3) any documentary, real, or demonstrative evidence." ECF No. [58] at 7. Petitioner was restricted to presenting only those documents submitted with his Petition for Review filed in the Eleventh Circuit. *Id.* The Court also ordered that the Government is entitled to adverse inferences against Petitioner. *Id.* The adverse inferences are listed in the Court's May 6, 2026, Order on Motion *in Limine* for Adverse Inferences. ECF No. [97]. The Court granted the Government's Motion *in Limine* to exclude the Declaration of Sonia Federic Antoine. *See* ECF No. [80]. In making its findings of fact and conclusions of law, the Court did not rely on those adverse inferences and instead made its determinations after careful consideration of the evidence presented at trial.

[7] Because it is Petitioner's burden to establish clear and convincing evidence of a blood relationship with a U.S. citizen father, the Court need not determine which, if any, birth certificate or Deed of Recognition is authentic. The fact that there are inconsistent records, even if some are deemed authentic by the U.S. Department of State, is a factor for the Court to consider in determining whether Petitioner has met his burden.

Petitioner and Nick Poppys. However, Y-STR analysis is a reliable and credible testing process to determine patrilineal relationships. The uncontested evidence presented at trial establishes that Steven Parker and Ronald Parker are likely Nick Poppys' biological children. Therefore, the Y-STR analysis's conclusion that Petitioner is "excluded as being from a paternal relative of Steven Parker and Ron Parker" is highly probative evidence that Petitioner does not have a blood relationship with Nick Poppys.

In addition to the DNA evidence, the testimony and documents presented weigh against Petitioner's claim that he has a blood relationship with Nick Poppys. The Court also credits the testimony of the Government's witnesses, which establishes that Nick Poppys resided in Minnesota with limited travel during the period Nick Poppys would have been traveling or living in Haiti to father a child, and Nick Poppys never acknowledged Petitioner to his family nor held himself out as Petitioner's father.

Although the Court need not definitively determine who is Petitioner's father, the Government has presented persuasive evidence that Nick Parker is Petitioner's father. The evidence is consistent that Petitioner has Canadian citizenship via his status as the son of Canadian citizen, Nick Parker, which was established with Nick Parker's first application in 1990 and reaffirmed as recently as 2022 when Petitioner renewed his Canadian passport. Petitioner could not obtain this citizenship if Nick Poppys were his father because Nick Poppys was not a Canadian citizen. Moreover, Nick Parker presented a Canadian passport and stated to CBP officials in 2006 that he was traveling to Florida to visit his son, Emile Parker, at an address known to be Petitioner's. Nick Poppys' health, his lack of Canadian citizenship, and Steven Parker's personal knowledge that Nick Poppys was not traveling far distances at that time make it highly implausible that he was the Nick Parker attempting to visit his son, Petitioner.

Where it is Petitioner's burden to show a blood relationship by clear and convincing evidence, the Court concludes Petitioner has not met his burden. Because Petitioner failed to establish a blood relationship with a U.S. citizen father, Petitioner cannot meet the requirements to prove citizenship under § 1409(a), and the Court need not address the remaining requirements of the statute. Accordingly, the Court concludes that Petitioner is not a U.S. citizen under § 1409(a).

## IV.  CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Pursuant to 8 U.S.C. § 1252(b)(5)(B) and 28 U.S.C. § 2201, the Court **DECLARES** as follows:

   a. Petitioner does not meet the requirements for citizenship under 8 U.S.C. § 1409(a) because Petitioner did not meet his burden to establish, by clear and convincing evidence, a blood relationship between him and a U.S. citizen father. Therefore, Petitioner is not a U.S. citizen.

2. Judgment shall be entered in favor of the Government.[8]

3. The Clerk of Court shall **CLOSE** this case.

4. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

---

[8] The Eleventh Circuit advised that the parties should file a timely notice of appeal if they wish to seek review of this Court's determination of Petitioner's nationality. *See* ECF No. [1] at 5 n.3.

**DONE AND ORDERED** in Chambers at Miami, Florida, on April 15, 2026.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record